By the Court.—Sedgwick, J.
The most serious exceptions relate to evidence that the plaintiff, as a witness, was allowed to give of conversations of Lord, the defendant’s testator. Some parts of these conversations were so clearly immaterial that it is not necesasry to specify them here. There were two important matters contained in the evidence. It will be noticed, that Mr. Barron owned a part of the stolen property, and Mr. Lord, the rest. The plaintiff’s claim was that he was employed by them individually, and not jointly. They had given to detective officers a power of attorney to act for them in certain respects. The plaintiff, as a witness, testified, under one of the objections, now considered, that he was present at an interview, at which he advised them to revoke that power of attorney, which was done. This was a personal transaction and communication between the witness and the defendant’s testator, which section 399 of the Code, forbade the witness being examined concerning. In Simmons v. Sisson (26 N. Y. 277), in Lobdell v. Lobdell (36 N. Y. 333); in Hildebrant v. Crawford (6 Lansing), and in the opinion of Judge Johhsoh, in Cary v. White (59 W. Y. 331); the admitting of the testimony was sustained because the transaction or communication, or conversation, was wholly between the deceased and a third party, and personal to them, the presence of the witness not changing its character in this respect. Likewise, it.is true, that the presence of a third party, will not show that what is in fact a personal transaction or communication between a party and a deceased person, is something different. IIor could what was said between the third party and the deceased which appears to be connected with something that passed between the witness and the deceased, be properly given in evidence, by itself. The whole of a conversation or transaction, not a part, is the competent evidence.
The same considerations are pertinent to the subject *197 matter of the other exception. The plaintiff'testified to a conversation when the deceased and his brother were present, when, as the witness said, “the subject of the payment for his services arose,” and that Mr. Bufus L. Lord said to Mr. Thomas Lord, “we cannot tell what we will have to pay, until we know what our lawyer’s charges are—turning to me, we three being together, turning his head towards me.” It is manifest that this as testified to, was in part, a communication between the witness and the deceased, unless the witness was to be understood, that he did not give a responsive tacit assent of some kind.
I am however, of opinion, that the judgment should not be reversed, if the testimony given could not have injured the defendant. It could not have done so, because there was uncontradicted evidence in the case, on which, the jury would have been bound, as matter of law, to find for -the plaintiff, on the issue, as to which the conversations of the deceased related. None of the witnesses were impeached. The inference on this point, to be drawn from their evidence, was not disputable. ■
As to the conversation about the power of attorney, it was in other parts of the case, shown, that the plaintiff drew it, and that Mr. Lord signed, and acknowledged it, and also other evidence, to which attention will be immediately given, showed that this was upon an employment by Mr. Lord. Without the conversation, the jury could have found only these facts.
On the subject of the- deceased employing the plaintiff, as his attorney, a detective officer proved, that his first acquaintance with Mr. Brague, the plaintiff, was made either by an introduction to him at Mr. Lord’s office, by Mr. Lord, or being referred to him by Mr. Lord. The witness was introduced to the plaintiff as Mr. Lord’s attorney, and was there to consult with him, and not annoy Mr. Lord. Mr. Lord preferred to leave it to Mr. *198 Brague. He often went to see Mr. Lord, and each time was referred to Mr. Brague, and consulted with Mr. Brague, how he should proceed. He was directed to consult with Mr. Brague. Mr. Lord would go to a criminal examination in no case, only on the advice of Mr. Brague. Another detective officer swore that he attended to the matter from the first, that Mr. Brague was present whenever the witness had an interview with Mr. Lord and Mr. Barron. Mr. Lord was present a great many times. Mr. Brague seemed to be as much interested for one as for the other. There was no defense that the plaintiff had been employed by Messrs. Lord and Barron jointly. Through the case there was proof of many pieces of business being done by the plaintiff for Mr. Lord to Mr. Lord’s knowledge.
The inference from these things by themselves, is indisputable, in matter of law, that the plaintiff' was employed by Mr. Lord to do those things, for which compensation was claimed in the action. The only possible question as to it, arises upon the defense that Mr. Brague looked only to the reward, and acted only upon the promise contained in the offer of a reward. There were only three facts in the case, on which this doubt could rest. The first was, that there was an offer of a reward. The second, that in two letters given in evidence, the plaintiff claimed that he had an interest in the reward, in case it should be earned. The third was, the terms of a receipt for five hundred dollars paid by Mr. Lord to the plaintiff.
The fact of an offer being made to pay a, reward specifically for the return of bonds, does not in any way modify ilie obligations of the defendant’s testator, under an express or implied promise to pay for services as an attorney, one employed by him. The offer of reward did not in any sense, employ the plaintiff as Mr. Lord’s attorney.
Properly no inference cv.uld have been drawn by *199 the jury, from the plaintiff’s two letters that be based his contingent claim to the reward upon any thing done by him, as Mr. Lord’s attorney, and for which he claimed in the action. They left his claim, unimpaired.
The receipt in evidence was “ Received from R. L. Lord, Esq., five hundred dollars to be deducted from first reward to which 1 may be entitled.” This, fairly construed supports the plaintiff’s position. Five hundred dollars being paid by Mr. Lord, showed that he owed a debt, upon something different from the offer of reward. He further recognizes that for something done by the plaintiff, he may also be entitled to the reward. The money was not to be returned, but the plaintiff promised to deduct it from the amount of the reward he should become entitled to.
There were some exceptions taken to refusals to charge, in respect to the effect of the evidence as to the reward. As, however, we have deemed that there was not any proof to show that the services charged for were done under the offer of reward, there is no necessity of examining these exceptions. The learned judge instructed the jury that the plaintiff would not be entitled, under the testimony, to any recovery in the shape of reward, or for services done on Mr. Barron’s behalf. The material finding of the jury, was on the value of the plaintiff’s services to Mr. Lord, as his attorney.
1 do not agree with the learned counsel for the defendants, that the plaintiff in testifying to the value of his services was improperly allowed to give the value, based in part upon his own knowledge of what the services were, inasmuch as he must have spoken in regard to personal transactions with the deceased contrary to section 399. The meaning of the question was from his knowledge of the services, as he had testified they were, and his general recollection of those things he *200 had testified he did. The objection should have been taken, if it were a good one, at the time he testified to his services and what he had.
There were objections taken to the introduction of copies of letters, in the absence of the originals and without accounting for them. Probably as no part of the claim was based directly upon the letters, they were collateral in that sense, which dispenses with the introduction of originals (1 Green. § 89). If this be not so, the introduction of the letters, so far as a disclosure of their contents was concerned, could not have influenced the jury to enhance the value of the plaintiff’s services, so far as they showed the return of a great quantity of the stolen property that bad been shown to be the fact by the testimony of other witnesses, and in no part of the case did the plaintiff claim that the measure of his compensation depended upon the amount of the bonds returned. Nor did the contents influence in any way the issue as to the plaintiff’s employment.
I have examined the exceptions with a sense that the merits of the issue were fully and fairly tried before the jury, and have npt been inclined togivegreater weight to them on this appeal, than is due to their practical relations to the result in the verdict.
The judgment should be affirmed with costs.
Monell, Ch. J., concurred.